UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., *on*             17-cv-01061 (JGK)
*behalf of itself and its related*
*insurers*,                                  OPINION AND ORDER

               Petitioner,

      - against -

SENECA FAMILY OF AGENCIES,

               Respondent.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

The petitioner, National Union Fire Insurance Company of
Pittsburgh, PA. ("National Union"), on behalf of itself and its
related insurers has petitioned to compel the Seneca Family of
Agencies ("Seneca") to arbitrate a dispute pursuant to the
Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4. National
Union has also moved for a preliminary injunction to prevent
Seneca from pursuing a state court action in California. The
underlying dispute in this case involves a disagreement over the
amount of collateral that Seneca is required to deliver under a
payment agreement (the "Payment Agreement") with National Union
that governs certain obligations related to a series of
California Workers' Compensation/Employers' Liability Insurance
policies (the "Policies") also issued by National Union.

National Union alleges subject matter jurisdiction pursuant
to 28 U.S.C. § 1332(a)(1).

**I.**

The following facts are taken from the parties' submissions.

National Union is a Pennsylvania insurance company with its principal place of business in New York. Pet. ¶ 4. Seneca is a California corporation with its principal place of business in California. Pet. ¶ 5.

National Union provided Seneca with workers' compensation and employers' liability insurance for Seneca's operations in California pursuant to the Policies, which were entered into each year from 2004 to 2013. Pet. ¶ 2; DeHaven Decl., Ex. 4 (Schedules of Policies and Payments). Each Policy was effective for a one-year period.

On November 1, 2004, the parties entered into the Payment Agreement, which governs the parties' financing and credit obligations with respect to the Policies. Pet. ¶¶ 8-9; see, e.g., DeHaven Decl., Ex. 1 (The November 1, 2004 Payment Agreement) at 3, 6. Among other things, the Payment Agreement requires Seneca to deliver collateral to National Union to secure Seneca's payment obligations. Pet. ¶¶ 8, 10; see, e.g., DeHaven Decl., Ex. 1 at 6.

The November 1, 2004 Payment Agreement required arbitration to decide disputes. The Payment Agreement's arbitration provisions (the "Arbitration Provisions") provided that "any

2

dispute[]" related to the amount of Seneca's payment obligations and "[a]ny other unresolved dispute arising out of [the Payment] Agreement must be submitted to arbitration." DeHaven Decl., Ex. 1 at 8. The Arbitration Provisions included an arbitral forum provision that left the determination of the arbitral forum to the arbitrators and a delegation provision (the "Delegation Provision") that provided that the arbitrators would "have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." DeHaven Decl., Ex. 1 at 9.

The Payment Agreement also contained provisions contemplating court resolution for disputes with respect to "How arbitrators must be chosen," with a litigation forum selection clause (the "Litigation Forum Selection Clause") designating certain New York courts as the forum for the resolution of disputes related to that subject. DeHaven Decl., Ex. 1 at 8. Specifically, the Payment Agreement provided that, in the event of arbitration, each party was to choose one arbitrator, who together would then choose a third. The three arbitrators would be the arbitral panel. However, if the first two arbitrators could not select the third arbitrator, then either party could make an application to a "Justice of the Supreme Court of the

State of New York, New York County" to select the additional arbitrator.[1] DeHaven Decl., Ex. 1 at 8.

The parties amended the Payment Agreement through "mandatory addenda" in 2009, 2011, and 2013. See DeHaven Decl., Ex. 2 (The 2009 Addendum); DeHaven Decl., Ex. 5 (The 2011 Addendum); DeHaven Decl., Ex. 3 (The 2013 Addendum). The provision in the Litigation Forum Selection Clause relating to the court-appointment of the third arbitrator was amended to provide that the parties could "make an application only to a court of competent jurisdiction in the City, County, and State of New York." DeHaven Decl., Ex. 3 § 7. And, as relevant to this case, the parties added the following provision to the Clause in the 2013 Addendum: "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." DeHaven Decl., Ex. 3 § 7.

## II.

Seneca argues that subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) is lacking because the amount in controversy is not in excess of $75,000. The argument is frivolous. The Petition alleges that the amount in controversy is in excess of

---

[1] The court was also empowered to appoint an arbitrator if either party refused to appoint an arbitrator.

$75,000. Pet. ¶ 6. The amount-in-controversy "burden is hardly
onerous" and there is "a rebuttable presumption that the face of
the complaint is a good faith representation of the actual
amount in controversy." <u>Scherer v. Equitable Life Assurance
Soc'y of U.S.</u>, 347 F.3d 394, 397 (2d Cir. 2003) (citation and
internal quotation marks omitted). Seneca has offered no support
to suggest that the amount-in-controversy allegation was not
made in good faith. <u>See</u> <u>id.</u> ("To overcome the face-of-the-
complaint presumption, the party opposing jurisdiction must show
'to a legal certainty' that the amount recoverable does not meet
the jurisdictional threshold." (citation omitted)). To the
contrary, as reflected in the Complaint in the California Action
(the "California Complaint"), at stake in this dispute is nearly
$1 million in collateral, years-worth of premiums, and statutory
and common law damages. <u>See</u> Ex. 6 ¶¶ 34, 39. The amount-in-
controversy is plainly satisfied.

### III.

National Union has petitioned to compel arbitration
pursuant to § 4 of the FAA.

### A.

Seneca argues that, with respect to its claims related to
any workers' compensation policies issued or renewed on or after
July 1, 2012 (the "Post-July 2012 Policies"), recently-enacted
(and little-interpreted) Cal. Ins. Code § 11658.5 overcomes the

normal presumption under the FAA in favor of enforcing

arbitration agreements according to their terms. Section

11658.5(a)(1) provides:

> An insurer that intends to use a dispute resolution or
> arbitration agreement to resolve disputes arising in
> California out of a workers' compensation insurance
> policy or endorsement issued to a California employer
> shall disclose to the employer, contemporaneously with
> any written quote that offers to provide insurance
> coverage, that choice of law and choice of venue or
> forum may be a jurisdiction other than California and
> that these terms are negotiable between the insurer
> and the employer. The disclosure shall be signed by
> the employer as evidence of receipt where the employer
> accepts the offer of coverage from that insurer.

If an insurer complies with § 11658.5(a)(1), then "a

dispute resolution or arbitration agreement may be negotiated by

the insurer and the employer before any dispute arises."

§ 11658.5(a)(2). The section only applies to agreements with

"California employers" as defined in § 11658.5(d). The parties

agree that Seneca is a California employer. By its terms,

§ 11658.5 applies to "workers' compensation policies issued or

renewed on or after July 1, 2012." § 11658.5(e).

National Union concedes that § 11658.5 applies to the Post-

July 2012 Policies and that the Arbitration Provisions in the

Payment Agreement constitute an "arbitration agreement" for

purposes of § 11658.5. National Union also concedes that it did

not comply with § 11658.5(a)(1)'s disclosure requirements, see

Nat. Union's Reply Mem. at 7-8, which triggers the section's

6

enforcement provision, § 11658.5(c): "Failure by the insurer to observe the requirements of subdivision (a) shall result in a default to California as the choice of law and *forum for resolution of disputes arising in California*." § 11658.5(c) (emphasis added).

The parties agree that "forum" as used in § 11658.5 refers to California in a geographical sense, while "venue" is meant to refer to any place within California. The statute is unclear whether noncompliance with § 11658.5, which occurred in this case, requires only that any arbitration be held in California; or that any litigation relating to the arbitration must be held in California, and, perhaps, that the only "forum" for a dispute will be a California court rather than an arbitration.

National Union argues that the penalty for noncompliance under § 11658.5(c) is that "arbitration must be conducted in California under California law." Nat. Union's Reply Mem. at 1-2. National Union argues, however, that § 11658.5 does not affect the ability of a court outside California to compel arbitration. Seneca responds that the resolution of any dispute, including a motion to compel arbitration, must occur in a California court (and not in an arbitration).

Ordinarily, the effect of § 11658.5 on arbitration would not require extensive analysis. To the extent that § 11658.5 disfavored arbitration, the FAA would preempt the state law.

<u>Kindred Nursing Centers Ltd. P'ship v. Clark</u>, 137 S. Ct. 1421,

1426 (2017); <u>see also</u> <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S.

63, 68 (2010) ("The FAA . . . requires courts to enforce

[arbitration agreements] according to their terms.").

However, under the McCarran-Ferguson Act, 15 U.S.C. 1011 <u>et</u>

<u>seq.</u>, any state statute that regulates the "business of

insurance" reverse-preempts any federal statute that does not

specifically regulate the business of insurance. <u>See</u> <u>Stephens v.</u>

<u>Am. Int'l Ins. Co.</u>, 66 F.3d 41, 43 (2d Cir. 1995) (holding that

anti-arbitration provisions in Kentucky insurance statute

regulating the liquidation of insurance companies reverse-

preempted the FAA).

Section 1012 of the McCarran-Ferguson Act provides in

relevant part: "No Act of Congress shall be construed to

invalidate, impair, or supersede any law enacted by any State

for the purpose of regulating the business of insurance, or

which imposes a fee or tax upon such business, unless such Act

specifically relates to the business of insurance . . . ."

Courts apply a three-part test to determine if a state

statute reverse-preempts a federal statute under the McCarran-

Ferguson Act: whether "(1) the federal statute in question does

not specifically relate to insurance; (2) the state law at issue

was enacted to regulate the business of insurance; and (3) the

federal statute at issue would invalidate, impair, or supersede

the state law." <u>Monarch Consulting, Inc. v. Nat'l Union Fire</u> <u>Ins. Co. of Pittsburgh, PA</u>, 47 N.E.3d 463, 470 (N.Y. 2016).[2]

National Union does not dispute that all three elements are met here. And rightly so.

First, the FAA does not specifically relate to insurance. <u>E.g.</u>, <u>Am. Int'l Ins. Co.</u>, 66 F.3d at 44; <u>Monarch</u>, 47 N.E.3d at 470.

Second, § 11658.5 was enacted to regulate the business of insurance. State statutes that regulate the terms, actual performance, or enforcement of insurance contracts for the protection of policyholders are among those enacted to regulate the business of insurance. <u>See</u> <u>U.S. Dep't of Treasury v. Fabe</u>, 508 U.S. 491, 501-05 (1993). There can be no doubt that § 11658.5 --- by regulating disclosures related to, and the enforcement of, workers' compensation policies --- was enacted for the protection of California policyholders. 2011 Cal. Legis. Serv. Ch. 566 (S.B. 684) (stating that "[w]orkers compensation policies and endorsements are highly regulated and designed

---

[2] <u>Monarch</u> held that Cal. Ins. Code § 11658, which requires an insurer to file a workers' compensation form or endorsement with the California insurance regulator, did not reverse-preempt the FAA because the FAA did not "invalidate, impair, or supersede" the state law. <u>Monarch</u>, 47 N.E.3d at 466. Because the policies in dispute in <u>Monarch</u> were issued before July 2012, the Court of Appeals did not reach "whether a different result would be compelled in a case implicating the later-enacted California Insurance Code § 11658.5." <u>Id.</u> at 472 n.3. That is the issue is this case with respect to the Post-July 2012 Policies.

primarily to protect the worker and ensure prompt payment of claims" and that one of the goals of § 11658.5 was to avoid "undermining the protections afforded to California employers under California law"); see also Monarch, 47 N.E.3d at 471 (noting that California courts have consistently found the FAA to be reverse-preempted by the McCarran-Ferguson Act with respect to arbitration agreements in health care service plans governed by a California statute requiring disclosures of arbitration agreements in health care plans).

Third, the question becomes whether the FAA would invalidate, impair, or supersede § 11658.5. See Humana Inc. v. Forsyth, 525 U.S. 299, 307-310 (1999) (defining "invalidate" to mean to "render ineffective, generally without providing a replacement rule or law"; "supersede" to mean to "displace (and thus render ineffective) while providing a substitute rule"; and "impair" to mean "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner"). There is a direct conflict between § 4 of the FAA and § 11658.5 when, as here, the insurance company admits that the section has been violated. Section 11658.5(c) requires that California must be the "forum for resolution of disputes arising in California." National Union concedes that this means, at least, that the arbitration must be conducted in California. But, under § 4 of the FAA, this Court, and any United States

district court in which a petition to compel arbitration is brought, can only order that the arbitration be held in the district where the petition is filed. It would be contrary to § 4 to order the arbitration to proceed in California. See also In re Home Ins. Co., 908 F. Supp. 180, 182 (S.D.N.Y. 1995) (collecting cases). Therefore, § 4 of the FAA must yield to § 11658.5. Accordingly, this Court should deny without prejudice National Union's motion to compel arbitration concerning the post-July 2012 Policies.

The conclusion that § 4 of the FAA conflicts with § 11658.5 is consistent with the interpretation of § 11658.5(c) by California state courts that "dispute resolution" as used in that section applies to litigation. See, e.g., Relton Corp. v Applied Underwriters, EC066066 (Cal. Cty. Ct. April, 7, 2017) (unreported) at 1, 3 (ruling that a Nebraska litigation forum selection clause was ineffective pursuant to § 11658.5).[3] California state courts have thus found that, in enacting § 11658.5, the California legislature was concerned that other

---

[3] Relton is attached as Ex. C to Seneca's Ltr. Seneca represents that there have been eight similar rulings by California state courts, which National Union does not dispute. See Seneca Ltr. at 2. Instead, National Union argues that these cases should be disregarded under California Court Rule 8.1115(a), but "when there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." Am. Zurich Ins. Co. v. Country Villa Serv. Corp., No. 14-CV-03779 (RSWL), 2015 WL 4163008, at *12 n.2 (C.D. Cal. July 9, 2015).

types of "dispute resolution" proceedings related to workers'
compensation disputes, such as litigation, would occur outside
of California. The present dispute before this Court is a
dispute resolution proceeding, namely, a litigation over the
arbitrability of the claims with respect to the Post-July 2012
Policies. It is consistent with the statutory goals underlying
§ 11658.5 that the questions of whether Seneca's claims must be
arbitrated, and whether § 11658.5 permits arbitration, be
addressed in the first instance by a court in California; this
Court should not decide the matter.

Because National Union has conceded that the Payment
Agreement is subject to § 11658.5 and that it did not comply
with § 11658.5, the petition to compel arbitration is **denied
without prejudice** with respect to the Post-July 2012 Policies.

**B.**

Seneca argues that the Litigation Forum Selection Clause is
unenforceable under Cal. Ins. Code § 11658 with respect to all
of the Policies. Section 11658 requires insurers to file
workers' compensation forms and endorsements with the California
insurance regulator before issuing them to insureds. Seneca
argues that this was not done and therefore that the Litigation
Forum Selection Clause is invalid.

Initially, National Union argues that the enforceability of
the Litigation Forum Selection Clause should be referred to the

arbitrators in the first instance. However, courts have concluded that the interpretation, enforceability, and validity of litigation forum selection clauses present questions of litagability for the courts that is antecedent (and unrelated) to the merits of an action (and thus to any questions as to the existence of an agreement to arbitrate arbitrability or the scope of that agreement). See, e.g., Arbitration Between Nat'l Union Fire Ins. Co. v. Pers. Plus, Inc., 954 F. Supp. 2d 239, 246-48 (S.D.N.Y. 2013); Israel v. Chabra, No. 04 CIV 4599, 2005 WL 589400, at *4 (S.D.N.Y. Mar. 11, 2005) ("[Litigation] forum selection clauses are to be enforced by the courts.").

While the validity of the Litigation Forum Selection Clause is an initial matter for this Court, that does not aid Seneca because its challenge is without merit.

Assessing the validity and enforceability of forum selection clauses involves a four-part analysis: First, "whether the clause was reasonably communicated to the party resisting enforcement"; second, "whether the clause [was] mandatory or permissive"; third, "whether the claims and parties involved in the suit are subject to the forum selection clause"; and, fourth, "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or

overreaching." Phillips v. Audio Active, Ltd., 494 F.3d 378,
383-84 (2d Cir. 2007) (internal quotation marks omitted).

The court in Pers. Plus, Inc., 954 F. Supp. 2d 239,
rejected a nearly identical challenge based on § 11658 to an
identical litigation forum selection clause and to similar
arbitration provisions in a materially similar payment agreement
issued by National Union, ruling that both sets of provisions
were enforceable. Seneca offers no basis to distinguish that
decision, which is on point.

First, "the [Litigation Forum Selection Clause] was clearly
communicated in the Payment Agreement, as the relatively short
agreement sets forth the [Clause] under the bold-faced and
capitalized heading, 'How Will Disagreements Be Resolved?
Arbitration Procedures' and specifies that disagreements can be
brought 'only to a court of competent jurisdiction in the City,
County, and State of New York.'" Id. at 246.

Second, the Litigation Forum Selection Clause is mandatory
because it provides that any motion to compel or stay
arbitration may be brought "only" in a court in New York. Id.

Third, the dispute at issue --- whether to compel
arbitration over disputes related to the Payment Agreement ---
is plainly contemplated by the Litigation Forum Selection
Clause. See id. at 246-47.

Fourth, Seneca's only challenge against the Litigation Forum Selection Clause is that the Payment Agreement as a whole is void and unenforceable in violation of § 11658. To challenge successfully a forum selection clause as void on the basis of illegality, the challenge must be directed against the forum selection clause itself, as opposed to the contract as a whole. See, e.g., Dollar Phone Access, Inc. v. AT & T Inc., No. 14-CV-3240 (SLT), 2015 WL 430286, at *8 (E.D.N.Y. Feb. 2, 2015); Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231, 1238 (11th Cir. 2011); Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006). The failure to challenge the Litigation Forum Selection Clause itself is fatal.

In an effort to salvage its claim, Seneca asserts that it is only, in fact, challenging the enforceability of the Litigation Forum Selection Clause. The argument is without merit because Seneca is plainly challenging the entire Payment Agreement. Seneca's allegations in the California Complaint make that point clear, as does the relief Seneca seeks in that Action. See Ex. 6 ¶¶ 26, 28, 38. Therefore, the Litigation Forum Selection Clause is enforceable.

## c.

Any claims related to any Policies issued or renewed before July 1, 2012 (the "Pre-July 2012 Policies") must be arbitrated. "The [FAA] requires the federal courts to enforce arbitration

agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (per curiam) (citation omitted). In accordance with FAA, district courts may compel arbitration when a party does not abide by an arbitration agreement.

When considering a petition to compel arbitration under the FAA, a court must determine: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident and Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (citation and internal quotation omitted). Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation. See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995). While parties are not required to arbitrate when they have not agreed to do so, see Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989), they are bound by provisions to which they have agreed. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 845 (2d Cir. 1987); see also Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc., No. 16-CV-5699 (JGK), 2016 WL 4204066, at *2 (S.D.N.Y. Aug. 4, 2016).

The court in Pers. Plus, Inc., 954 F. Supp. 2d at 247–48,

held that materially similar claims must be arbitrated pursuant

to materially similar arbitration provisions. This Court in

Advanced Micro Devices, Inc., 2016 WL 4204066, at *1-2, and the

New York Court of Appeals in Monarch, 47 N.E.3d at 475, reached

the same conclusion in nearly identical cases.

With respect to the Pre-July 2012 Policies, Seneca offers

no basis to distinguish these cases.[4] Seneca does not dispute

that it agreed to the Payment Agreement, including the

Arbitration Provisions. Nor does Seneca dispute that the

Arbitration Provisions contemplate that the claims brought in

the California Action must be arbitrated, or that the

Arbitration Provisions are unambiguous. Seneca does not argue

that § 11658 forecloses arbitration through reverse-preemption

of the FAA, an argument that courts have rejected in any event

because § 11658 does not conflict with the FAA. See Pers. Plus,

Inc., 954 F. Supp. 2d at 248; Monarch 47 N.E.3d at 473.

Instead, Seneca's primary argument against arbitration is

that the Payment Agreement (and thus all of its provisions,

including the Arbitration Provisions) was not filed with the

California insurance regulator and is therefore unenforceable

---

[4] Section 11658.5 did not apply in Advanced Micro Devices, Inc.,
2016 WL 4204066, at *1, Pers. Plus, Inc., 954 F. Supp. 2d at
243, or Monarch 47 N.E.3d at 468, because the policies in those
cases were issued or renewed before July 1, 2012.

under § 11658. This challenge founders for the same reasons discussed in connection with the challenge to the Litigation Forum Selection Clause because "[c]hallenges to the enforceability of an entire agreement that contains an arbitration clause, as opposed to a challenge to the arbitration clause itself, are to be considered by the arbitrator in the first instance." Advanced Micro Devices, Inc., 2016 WL 4204066, at *3 (citation omitted).

As with its challenge to the Litigation Forum Selection Clause, Seneca asserts that it is only, in fact, challenging the enforceability of the Arbitration Provisions, including the Delegation Provision. That claim is without merit for the reasons already discussed.

Seneca and National Union have an agreement to arbitrate. The claims related to the Pre-July 2012 Policies plainly fall within the scope of that arbitration agreement. "A party can be deemed to have refused arbitration by filing a lawsuit on a matter that comes within the scope of the arbitration clause." Nat'l Union Fire Ins. Co. of Pittsburgh v. Konvalinka, No. 10-cv-9355 (AKH), 2011 WL 13070859, at *3 (S.D.N.Y. Mar. 17, 2011) (citations omitted). Seneca has refused to abide by its agreement, which warrants granting National Union's petition to compel arbitration under 9 U.S.C. § 4. See Advanced Micro Devices, Inc., 2016 WL 4204066, at *4.

The petition to compel arbitration is **granted** with respect to any claims related to the Pre-July 2012 Policies.[5]

## IV.

National Union has met the requirements for a preliminary injunction enjoining Seneca from proceeding further in the California Action with respect to any claims related to the Pre-July 2012 Policies. "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

Seneca makes no argument against the preliminary injunction in the event the motion to compel arbitration is granted.

Losing the ability to enforce an arbitration agreement is a form of irreparable harm. See, e.g., Advanced Micro Devices,

---

[5] The resolution of the parties' dispute will entail piecemeal dispute resolution, one set of claims going to arbitration, another set remaining with a court in California (pending possibly another motion to compel arbitration). However, "[T]he Supreme Court has explained that the [FAA] 'requires piecemeal resolution when necessary to give effect to an arbitration agreement.' In such circumstances, a court must 'compel arbitration of pendent arbitrable claims . . . . even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" LG Elecs., Inc. v. Wi-Lan USA, Inc., 623 F. App'x 568, 571 (2d Cir. 2015) (summary order) (citation omitted).

<u>Inc.</u>, 2016 WL 4204066, at *5 (collecting cases). National Union has also shown a likelihood of success because it has shown that it has a dispute with Seneca that should be decided by an arbitral panel. <u>Id</u>. The request for a preliminary injunction enjoining Seneca from proceeding with the California Action with respect to any claims on the Pre-July 2012 Policies is **granted**.

With respect to any claims on the Post-July 2012 Policies, the application is **denied** because Seneca may proceed with the California litigation. Seneca has held the California Action in abeyance to preserve National Union's right to arbitrate those claims, which has not been foreclosed by this decision. National Union may raise the issue of arbitrability before the state court in California where the action is pending, or before a federal court in California.

### CONCLUSION

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. National Union's petition to compel arbitration, and its motion to enjoin Seneca during the pendency of the arbitration from proceeding with the California Action, are **granted** with respect to any claims related to the Pre-July 2012 Policies. National Union's motion to compel arbitration with

respect to any claims related to the Post-July 2012 Policies is **denied without prejudice**, and its motion to enjoin Seneca from proceeding with the California Action with respect to those claims is **denied**. The Clerk of Court is directed to close all pending motions.

**SO ORDERED.**

**Dated:    New York, New York**
          **June 12, 2017**

                    _____/s/_____
                            **John G. Koeltl**
                    **United States District Judge**